# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JOE GLENN SUELL, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 13-0252-WS-B |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

This matter is before the Court on the defendant's motion to dismiss or, in the alternative, for summary judgment and on the plaintiffs' competing motion for partial summary judgment. (Docs. 106, 108). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 100, 103, 106-07, 109, 113-15, 118-19), and the motions are ripe for resolution. After careful consideration, the Court concludes that both motions are due to be denied.

## BACKGROUND

According to the complaint, (Doc. 1), plaintiff Joe Suell was struck by a motor vehicle driven by Edward Hager, a veterinarian employed by the United States Department of Agriculture. The complaint sets forth two claims against the defendant under the Federal Tort Claims Act ("FTCA"): one on behalf of Mr. Suell for negligence and/or wantonness, and another on behalf of his wife, Tracy Suell, for loss of consortium and related damages.

As relevant here, a claim under the FTCA is available for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). The parties'

motions seek a favorable ruling on the issue whether Dr. Hager was acting within the scope of his office or employment.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[1] Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited. Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

The parties agree that the question whether Dr. Hager was acting within the scope of his office or employment under Section 1346(b)(1) is governed by the law of Alabama, where the alleged wrong occurred. In particular, Alabama's law

---

[1] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so.").

3

of respondeat superior, as applied to employees involved in motor vehicle accidents, applies. (Doc. 106 at 3-4; Doc. 109 at 16).

Dr. Hager lives in Prentiss, Mississippi and ordinarily works in that state. However, he is subject to being temporarily assigned, and he was assigned to a Dothan facility in August 2011 to cover for a resident veterinarian who was attending training. His last services as a veterinarian on this assignment were provided on Friday, August 26. Before dawn on August 27, Dr. Hager left Dothan in his personal vehicle and headed to Prentiss. While traveling through Mobile, Dr. Hager's vehicle struck Mr. Suell's motorcycle.

"The general rule is that an employee using an automobile, whether belonging to his master or to himself, in going to and from his place of work, is not at such times regarded as engaged in work for his master but is acting solely for his own purposes." *Smith v. Brown-Service Insurance Co.*, 35 So. 2d 490, 493 (Ala. 1948). It is uncontroverted that, at the time of the accident, Dr. Hager was driving from his place of work (Dothan) to his home (Prentiss). The general rule is thus in play and, unless an exception applies, the general rule precludes the plaintiffs' suit against the defendant.

The plaintiffs focus on the following exception: "[W]here a master bears a part of the expense of an automobile used by his servant in going to and from his work and in and about his employment, and such transportation arrangement is beneficial to both, the relation of master and servant continues while the automobile is used for such purposes." *Atlanta Life Insurance Co. v. Stanley*, 165 So. 2d 731, 735 (Ala. 1964). The Alabama Supreme Court in *Shaw v. C.B. & E., Inc.*, 630 So. 2d 401 (Ala. 1993), borrowing from worker's compensation cases, phrased the exception as "aris[ing] when the driver/worker's transportation expenses constitute a part of the consideration paid for his services." *Id*. at 404. The Supreme Court recently applied *Shaw*'s formulation in *Chesire v. Putman*, 54 So. 3d 336, 340-41 (Ala. 2010).

There is evidence that the defendant reimbursed Dr. Hager for his travel expenses at the rate of $0.51 per mile, with the number of miles based on the most direct route from Dothan to Prentiss. The defendant denies that these payments are "part of the consideration paid for [Dr. Hager's] services," on the grounds that he did not receive "actual fuel expenses" but a "standardized mileage subsidy." (Doc. 106 at 23). This cannot make a difference any more than it did in *Stanley*, where the employer did not pay the employee's actual expenses but "paid him $5.00 per week toward" his vehicle operating expenses. 165 So. 2d at 734.

Citing *Chesire*, the defendant argues that the exception applies "only where an employee substantially adhered to a predetermined route," (Doc. 119 at 7), and the defendant suggests that Dr. Hager did not do so because he took the longer (but faster) Interstate route home rather than the more direct (but slower) route on which his mileage reimbursement was based. *Chesire*, however, does not stand for the proposition for which the defendant contends. The Court there merely concluded that the driver was not "on a personal errand" because, although he made two personal stops, he was not "traveling a substantially different route home" than his "norma[l]" (not "predetermined") route. 54 So. 3d at 341. At most, *Chesire* may suggest that a driver paid for his travel expenses home is not subject to the exception if he is not traveling home but has wandered off on some other, personal mission. Here, there is evidence that Dr. Hager was at all times traveling home, and by an efficient route.

Along similar lines, and citing *Smith*, the defendant argues that the exception applies "only … where the accident occurred in the area covered by the transportation expenses or along a route authorized by the employer." (Doc. 119 at 4 & n.2). *Smith* may support the proposition that, when the employer furnishes funds to defray the cost of operating a vehicle used in traveling the employee's territory, the provision of such funds does not support employer liability when the employee is traveling outside his territory, *see* 35 So. 2d at 491, 493-94, but neither *Smith* nor the other case on which the defendant relies (which did not

5

involve the exception at all) suggests that an employee traveling home must be driving "a route authorized by the employer." As previously noted, Dr. Hager was traveling home along an efficient route, and that is sufficient – perhaps more than sufficient – for purposes of the exception.

As the defendant notes, (Doc. 119 at 5-6), application of the exception also requires that the "transportation arrangement is beneficial to both" the employer and the employee. 165 So. 2d at 735.[2] The plaintiffs assert that the defendant benefited from Dr. Hager's travel because it "allowed the important inspection station in Dothan to remain open while the FSIS veterinarian regularly assigned there was on leave." (Doc. 115 at 7). There is evidence that Dr. Hager was assigned to cover the first shift at the Dothan station in place of another veterinarian and that he was the only veterinarian assigned to cover that shift in the resident veterinarian's absence. (Docs. 100-5, -6, -7).

In *Stanley*, the employee – a traveling insurance salesman who worked out of his home – had policy premiums in his car as he traveled home after completing his work for the day. 165 So. 2d at 646. The Supreme Court held that "[i]t was beneficial to his master that [the employee] returned the premium collections to his home and headquarters." *Id*. at 647. There was at least equal benefit imparted by Dr. Hager's travel, since it allowed the inspection station to be staffed and thus properly operated. The defendant's unexplained assertion that the effect of Dr.

---

[2] Neither *Shaw* nor *Chesire* cited *Stanley* or acknowledged a "benefit" requirement, but the Court does not believe that the Alabama Supreme Court thereby overruled this portion of *Stanley* sub silentio. *See, e.g., Ex parte Norfolk Southern Railway Co*., 897 So. 2d 290, 293 (Ala. 2004) (the Supreme Court may "sufficiently disregar[d] [a precedent] over the years so as to lead to the conclusion that it has been overruled sub silentio"). Because *Shaw* noted but did not apply the exception, its failure to mention the "benefit" requirement of the exception does not contribute to a sub silentio overruling of *Stanley*. A single, recent decision (*Chesire*) applying the travel-expenses exception without consideration of a "benefit" requirement seems too slender a reed on which to rest a conclusion that *Stanley* has been overruled sub silentio.

Hager's presence or absence on station operations is "speculative," (Doc. 119 at 13), ignores the evidence cited in the preceding paragraph.

The defendant falls back to an interesting split-the-baby argument: while it may have benefited from Dr. Hager's travel *to* Dothan, it did not benefit from his travel *from* Dothan, since Dr. Hager had by then concluded his provision of veterinary services *in* Dothan. (Doc. 119 at 13). The defendant does not explain how it could receive the benefit of Dr. Hager's travel to Dothan and rendition of services there without Dr. Hager returning home afterwards; his travel home thus benefited the defendant as much as did his travel to Dothan.

The defendant also argues that, where the employee's subjective motivation in traveling home is wholly personal, as a matter of law his travel does not benefit the employer, even when the employer reimburses his travel expenses. (Doc. 106 at 13). Nothing in the travel-expenses cases supports this proposition, and the single case on which the defendant relies did not involve payment of the employee's travel expenses at all but rather payment of mileage taxes by the employer, on its own vehicle, directly to the taxing authority. *Hays v. Deaton Truck Line, Inc.*, 87 So. 2d 825, 828 (Ala. 1956).

The Court need not and does not rule that all employee travel between home and worksite benefits the employer for purposes of the travel-expenses exception. But when, as the evidence here indicates, that travel is to or from a remote location where the employee has been temporarily assigned, and where the employer could not continue its normal operations absent the employee's assignment, the Court has no difficulty concluding that the benefit requirement is satisfied.

*Stanley* requires that the travel arrangements be beneficial to the employee as well as to the employer. Such a benefit appears to be found in the mere fact that the employee's travel expenses are paid or reimbursed. *See Stanley*, 165 So. 2d at 647 (finding the exception satisfied without addressing any benefit to the employee); *International Brotherhood of Teamsters, Chauffeurs, Warehousemen*

*& Helpers of America v. Hatas*, 252 So. 2d 7, 19-20 (Ala. 1971) (the employee's paid return home to Louisiana was beneficial to him) (citing *Stanley*). The defendant makes no argument that this side of the "benefit" element is unsatisfied.

The defendant next insists that the travel-expenses exception applies only "where the employer has reserved a right of control over the employee's conduct at the time the accident occurred." (Doc. 119 at 4). The travel-expenses cases do not support this proposition, and the only case on which the defendant relies was not applying the travel-expenses exception. The employer in *Smith* did help defray the employee's vehicle expenses, but only for the vehicle's use in servicing the employee's rural territory. 35 So. 2d at 492. Thus, when the employee was involved in an accident in the city, the Court declined to utilize the exception and instead evaluated the employer's liability using traditional right-of-control analysis. *Id*. at 493-95.

Finally, the defendant points to Justice Murdock's concurrence in *Chesire*, in which he appears to express skepticism at importing a travel-expenses exception from worker's compensation law into respondeat superior law and cautions that any such exception should apply "only under narrow circumstances." 54 So. 3d at 346 (Murdock, J., concurring in the result). (Doc. 119 at 8). While *Chesire* and *Shaw* cited cases from the worker's compensation context, *Stanley* represents the earliest known Alabama Supreme Court decision recognizing the exception in the respondeat superior context, and in doing so the *Stanley* Court did not rely on any worker's compensation cases. *See* 165 So. 2d at 646-47 (citing *General Foods Corp. v. Coney*, 48 So. 2d 781 (Ala. App. 1950)). Whether or not the exception should be given the narrow reading Justice Murdock somewhat vaguely favors, the circumstances of this case do not test the outer limits of the exception.

For the reasons set forth above, the Court concludes that the travel-expenses exception applies under the plaintiffs' version of the evidence. When the exception applies, it provides "substantial evidence indicating that [the employee]

8

was operating within the course and scope of his employment." *Chesire*, 54 So. 3d at 341. "Substantial evidence" is evidence from which the jury "can reasonably infer the existence of the fact to be proved." *Id*. at 340; *accord Stanley*, 165 So. 2d at 647 (when the exception applies, "the question as to whether [the employee] was in and about the business of the [employer] at the time of the accident [is] for the jury"). The applicability of the exception thus requires the denial of the defendant's motion to dismiss or for summary judgment, as the defendant concedes. (Doc. 113 at 21). Since the defendant's other evidence and arguments cannot alter this result, the Court need not consider them.

The plaintiffs appear to argue that the applicability of the exception compels the Court to rule that Dr. Hager was acting in the line and scope of his employment. (Doc. 109 at 23; Doc. 115 at 17, 20). As the quotes in the immediately preceding paragraph reflect, this is incorrect; satisfying the exception merely creates a jury issue as to whether the employee was so acting. The question thus becomes whether the plaintiffs have presented other evidence and argument which, taken together with their evidence concerning the travel-expenses exception, eliminates any jury issue and entitles them to judgment as a matter of law on the line-and-scope issue.

The plaintiffs first urge the Court to recognize a "traveling employee" theory of respondeat superior liability. (Doc. 109 at 25-27). There is such an animal under Alabama worker's compensation law[3] but, as the plaintiffs acknowledge, (Doc. 115 at 24), not under respondeat superior jurisprudence. The plaintiffs say the Court should import the theory into the latter context because, after all, *Shaw* and *Chesire* cited worker's compensation cases in addressing the traveling-expenses exception. (*Id*.). As the Court has noted, however, the traveling-expenses exception actually stems from *Stanley* and earlier respondeat superior cases. Moreover, and as the defendant notes, (Doc. 113 at 19-20), there is

---

[3] *E.g., McDaniel v. Helmerich & Payne International Drilling Co*., 112 So. 3d 41 (Ala. Civ. App. 2012).

an inherent bias in the worker's compensation context towards finding that an accident arose out of and in the course of employment, and the plaintiffs have not shown that Alabama's respondeat superior analysis harbors a similar leaning in favor of finding that an employee acted within the line and scope of his employment. On the contrary, "[w]e have … expressly rejected any one-to-one correspondence between compensation cases and the common law in the application of the law of master and servant …." *Ex parte Stewart*, 518 So. 2d 118, 120 n.2 (Ala. 1987). Just as "compensation cases require a broader conception of the employer-employee relationship" than do respondeat superior cases, *id*., so they appear to set a lower bar in terms of assessing the relationship between an accident and the employment. In short, no "traveling employee" theory is or will be part of this case.

The plaintiffs offer the following as additional evidence that Dr. Hager was acting within the line and scope of his employment at the time of the accident: (1) he had been "ordered" to return home on August 27; (2) he received 5.75 hours of comp time representing his travel time home; (3) he was reimbursed for meals on the trip home; (4) Dr. Hager and two other government representatives testified he was acting within the line and scope of his employment at the time of the accident; and (5) he received federal worker's compensation benefits as a result of the accident. (Doc. 109 at 18-22; Doc. 115 at 4-17). The defendant questions the significance and even the admissibility of much of this evidence, but the Court need not wade into such waters, because the plaintiffs have failed to demonstrate, by resort to analysis and legal authority, that the circumstances on which they rely would, even if fully credited, eliminate any jury issue on the line-and-scope issue.[4]

---

[4] The plaintiffs instead offer only repeated bald assurances that their evidence eliminates any triable issue. (Doc. 109 at 20-22; Doc. 115 at 4, 7, 12, 13, 29).

## CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss or, in the alternative, for summary judgment, and the plaintiffs' competing motion for partial summary judgment, are **denied**.

DONE and ORDERED this 8th day of October, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE